REPORTED

IN THE COURT OF SPECIAL APPEALS

OF MARYLAND

No. 242

September Term, 1996

---

MARTHA L. RITTER

v.

LUCILLE NEW RITTER,
Personal Representative of the
Estate of Eugene K. Ritter

---

Moylan,
Davis,
Sonner,

JJ.

---

Opinion by Sonner, J.

---

Filed: January 3, 1997

13p8

2140

This is a case in which the Montgomery County Circuit Court, sitting as the Orphan's Court, granted summary judgment in a will contest on the grounds of estoppel by judgment. The court, in applying the doctrine of estoppel, found that a previous finding of fact in a circuit court case, which was appealed and upheld by this Court in an unreported decision, was a finding of fact that precluded the appellant from offering evidence of testamentary capacity in probate proceedings. We find that the application of the doctrine of estoppel was in error and, therefore, we reverse the granting of the motion for summary judgment.

## FACTS

Martha and Kerfoot Ritter are sister and brother who have been litigating since 1993. Their litigation began with the rivalry for primacy in controlling the affairs of their aged and ill father, Dr. Eugene K. Ritter, now deceased. In August of 1993, Kerfoot filed a complaint for an Emergency Restraining Order against Martha alleging that his sister was interfering in the medical and personal affairs of their father. After a two-day evidentiary trial, Judge James McAuliffe found by clear and convincing evidence that Martha had had a disruptive and detrimental influence on Dr. Ritter's physical and mental health and restrained her from further involvement in his medical and personal affairs.

At that trial, Martha attempted to convince the court that the Power of Attorney granted to Kerfoot and their mother, Lucille, in September of 1992 should be revoked because she alleged that on March 5, 1993, Dr. Ritter revoked Kerfoot's powers and had executed one on February 13, 1993, empowering her. Kerfoot thereafter

introduced evidence that Dr. Ritter, on March 24, 1993, had revoked Martha's powers and reinstated Kerfoot. Martha then contended that Dr. Ritter on May 5, 1993, reinstated her and revoked the powers of her brother. She also alleged that she obtained additional powers on July 27th. The trial court at the hearing was therefore called upon to resolve just who had the Power of Attorney to act for Dr. Ritter.

During the trial, the court heard sixteen witnesses who were overwhelmingly of the opinion that Dr. Ritter was not competent to handle his own affairs. At the conclusion, the court upheld the validity of the original Powers of Attorney granted to Lucille Ritter and Kerfoot Ritter in September and November of 1992. In so doing, Judge McAuliffe found as a matter of fact that Dr. Ritter had suffered a "psychological event" of unknown etiology in December of 1992 and from that day forth had not been mentally competent to handle his own affairs and that any instrument entered into thereafter" was not to be given legal effect. The appellant in this case noted an appeal to this Court, which in an unreported opinion filed on October 5, 1995, affirmed Judge McAuliffe's decision.

That, however, did not end the litigation between the Ritters. Dr. Ritter died on November 3, 1993, less than a month after the hearing before Judge McAuliffe. In September 1994, Kerfoot filed a will with the Register of Wills executed by Dr. Ritter on September 3, 1992. Martha thereafter caveated the will submitted by Kerfoot and filed what she claimed to be a later will executed

3

by Dr. Ritter on July 12, 1993. The estate, then represented by Kerfoot, caveated the will filed by Martha.

At a hearing in the Circuit Court for Montgomery County, sitting as the Orphan's Court, Judge Vincent Ferretti granted summary judgment to the estate represented by Kerfoot. In an oral ruling from the bench, he informed the parties that he was granting summary judgment on the ground of estoppel by judgment because of Judge McAuliffe's finding of fact in the September 1993, hearing. Judge Ferretti stated:

> The issue that was tried before Judge McAuliffe was the issue of competency. It wasn't the issue of whether or not a guardian should have been appointed, but it was in fact when you go back and look at what really happened, the issue, vel non, of those powers of attorney that is what the case really turned on.
>
> The validity of the powers of attorney, which is very akin to the power to make a will, because it is competence to make a deed, to make a power of attorney, which essentially is, in essence, in the nature of a deed, and the power to make a gift, or to know the object of your bounty and decide to give what you want to the object of your bounty.
>
> Given all of that, I am going to find that the will that was probated, to which the caveat was filed, the will of July 12, 1993, is presumed to be invalid because of the facts of this case.
>
> And there is collateral estoppel based upon the hearing by Judge McAuliffe and the decision by the Court of Special Appeals when this issue was truly litigated and aired, and everybody had the opportunity to bring whatever they wanted to that judicial table and have it determined.
>
> And that the proponent of this will, Martha Ritter, was a party to that proceeding, is bound by that proceeding, and what that does is keep in place that presumption -- and that is really what this case is turning on is this presumption. I want to make that clear.

This Court has cautioned that "[s]ummary judgment is not a procedural shortcut to avoid a trial. Rather, it is an appropriate method of resolving cases, prior to trial, when the facts are undisputed." *Aetna Insurance Company v. Aaron*, ___ Md. App. ___, No. 187, September Term 1996, slip op. at ___ (filed December 3, 1996); *see Seaboard Surety Company v. Richard F. Kline, Inc.*, 91 Md. App. 236, 603 A.2d 1357 (1992). In deciding whether to grant a motion for summary judgment, the trial court must determine that no material facts are in dispute, and that one party is entitled to judgment as a matter of law. Md. Rule 2-501; *see Beatty v. Trailmaster Products, Inc.*, 330 Md. 726, 737-38, 625 A.2d 1005 (1993). The trial court must view all facts, and the possible inferences from the facts, in the light most favorable to the party opposing the motion. *Delia v. Berkey*, 41 Md. App. 47, 51, 395 A.2d 1189 (1978), aff'd, 287 Md. 302, 413 A.2d 170 (1980). If no material facts are disputed, an appellate court reviews the trial court's grant of summary judgment to insure that it reached the correct legal result. *Beatty*, 330 Md. at 737.

To defeat a summary judgment motion, the party opposing the motion must demonstrate that there was a dispute as to material facts. *Scroggins v. Dahne*, 335 Md. 688, 645 A.2d 1160 (1994). A fact is material if the outcome of the case depends on how the factfinder resolves the disputed fact. *King v. Bankerd*, 303 Md. 98, 111, 492 A.2d 608 (1985).

In this case, Judge Ferretti made clear that the basis of his

decision was that Martha was estopped by judgment from introducing evidence that her father had testamentary capacity at the time he executed the will that she sought to introduce to trump the earlier one filed by her brother. The prior judicial finding that Judge Ferretti relied upon to apply the doctrine was a consolidated Petition of Appointment of a Guardian for Dr. Ritter and a Complaint for an Emergency Restraining Order which resulted in a two-day hearing primarily focused upon Martha's conduct in interfering with her father. Judge McAuliffe decided that she had acted dangerously and inappropriately, to the detriment, of her father and concluded that she must be restrained pending the determination of the guardianship. During the hearing, Judge McAuliffe heard testimony from a number of witnesses, leading him to conclude that no powers of attorney executed after December 1992, were legally valid because Dr. Ritter was legally incompetent. In an Order signed on September 28, 1993, Judge McAuliffe stated that no powers of attorney but the ones executed on September 3, 1992 and November 3, 1992, were valid and that "no other [p]owers of [a]ttorney, revocations, or ancillary documents are valid or effective."

Kerfoot contends that the Order indicates a finding of fact of a lack of testamentary capacity because of the specific language of the Order indicating the findings and further because the finding of incompetency under the law is at least equivalent to a lack of testamentary capacity. We do not agree.



6

First, in order for estoppel by judgment to apply, the prior factual determination must involve the same subject matter as the second proceeding. *Cook v. State*, 281 Md. 665, 381 A.2d 671 (1988), cert denied, 439 U.S 839 (1978). The issue at the first hearing that Kerfoot seeks to use to bar a second hearing is the issue of whether Dr. Ritter was competent to execute powers of attorney after December, 1992, in particular, when Martha alleged that he executed powers empowering her to act in his behalf and revoking those granted to his wife, and Kerfoot. Judge McAuliffe determined as a fact that Dr. Ritter lacked the power to execute powers of attorney. He made no decision, however, as to Dr. Ritter's testamentary capacity during the same period because he did not have before him the subject matters of the will that Martha was attempting to file for probate. The standard of testamentary capacity set forth in *Sykes*, Contest of Wills in Maryland, Sec. 61 at 72 (1941) is:

> Whether a testator had sufficient mental capacity is determined by a consideration of his external acts and appearances. It must appear that <u>at the time of making the will</u>, he had a full understanding of the nature of the business in which he was engaged; a recollection of the property of which he intended to dispose and the persons to whom he meant to give it, and the relative claims of the different persons who were or should have been the objects of his bounty.

*Webster v. Larmore*, 268 Md. 153, 299 A.2d 814 (1973) (emphasis added); *See Phelps v. Goldberg*, 270 Md. 694, 313 A.2d 683 (1974); *Wall v. Heller*, 61 Md. App. 314, 486 A.2d 764 (1985), cert denied, 303 Md. 297, 493 A.2d 350 (1985) (applying the *Sykes* test).

7

Not only must judges consider facts relevant to the will in will contest cases, they must direct their inquiry to the issue of capacity at the time of the testamentary act. *Arbogast v. McMillan*, 221 Md. 516, 158 A.2d 97 (1960). The Court in *Wall v. Heller* held that "evidence tending to establish incompetency may relate to periods preceding or succeeding the execution of the will; however, the evidence must reasonably relate to the date of execution." *Wall*, 61 Md. App. at 328. Judge McAuliffe concluded that the powers of attorney executed on May 5, 1993 and July 27, 1993, both shortly before and shortly after the date of the will Martha sought to file, were ineffective. There was no testimony, however, about the specific date of the execution of the will, July 12, 1993, that Martha was seeking to have probated, primarily because at that hearing, there was no issue of fact or law for Judge McAuliffe to decide concerning that date.

Although there are no cases exactly on point in Maryland, other jurisdictions that have considered the issue in cases similar to this case have refused to use the doctrine of estoppel by judgment or a prior adjudication of incompetency to bar a trial on the issue of testamentary capacity.

In the North Carolina case of *Will of Maynard*, 307 S.E.2d 416 (N.C. 1983), review denied, 312 S.E. 2d 885 (1984), the testatrix in 1977 executed a will when she was 73 years old and then, two years later on February 21, 1979, was adjudged to be incompetent for want of understanding to manage her own affairs and a guardian was appointed for her. On November 13 of the same year, some nine

Not only must judges consider facts relevant to the will in will contest cases, they must direct their inquiry to the issue of capacity at the time of the testamentary act. *Arbogast v. McMillan*, 221 Md. 516, 158 A.2d 97 (1960). The Court in *Wall v. Heller* held that "evidence tending to establish incompetency may relate to periods preceding or succeeding the execution of the will; however, the evidence must reasonably relate to the date of execution." *Wall*, 61 Md. App. at 328. Judge McAuliffe concluded that the powers of attorney executed on May 5, 1993 and July 27, 1993, both shortly before and shortly after the date of the will Martha sought to file, were ineffective. There was no testimony, however, about the specific date of the execution of the will, July 12, 1993, that Martha was seeking to have probated, primarily because at that hearing, there was no issue of fact or law for Judge McAuliffe to decide concerning that date.

Although there are no cases exactly on point in Maryland, other jurisdictions that have considered the issue in cases similar to this case have refused to use the doctrine of estoppel by judgment or a prior adjudication of incompetency to bar a trial on the issue of testamentary capacity.

In the North Carolina case of *Will of Maynard*, 307 S.E.2d 416 (N.C. 1983), review denied, 312 S.E. 2d 885 (1984), the testatrix in 1977 executed a will when she was 73 years old and then, two years later on February 21, 1979, was adjudged to be incompetent for want of understanding to manage her own affairs and a guardian was appointed for her. On November 13 of the same year, some nine

8

months later, she executed a second will revoking the 1977 will. The 1977 will was submitted to probate and then a few days later the executor named in the 1979 will submitted that will for probate. The trial court submitted the two wills to a jury which found that the 1979 will was a valid Last Will and Testament. On appeal, the North Carolina Supreme Court held that the jury could consider the second will. The prior adjudication of incompetency did not raise a conclusive presumption that the testatrix lacked testamentary capacity on the date she executed the subsequent will. The court quoted with approval the prior North Carolina case of *Sutton v. Sutton*:

> Where a person has been adjudged incompetent from want of understanding to manage his affairs, by reason of physical and mental weakness . . . , and the court has appointed a guardian, and not a trustee, the ward is conclusively presumed to lack mental capacity to manage his affairs, insofar as parties and privies to the guardianship proceedings are concerned; and, while not conclusive as to others, it is presumptive proof of the mental incapacity of the ward, and this presumption continues <u>unless rebutted in a proper proceeding</u>.

Id. (citing *Sutton v. Sutton*, 22 S.E.2d 553 (N.C. 1942) emphasis added).

The *Maynard* court noted that there is a presumption of testamentary capacity and that those who allege otherwise have the burden to prove a lack of capacity. *Maynard*, 307 S.E.2d at 426. "person having been declared incompetent to manage his affairs es not, in and of itself, establish a lack of testamentary pacity; it is only prima facie evidence of incapacity." Id. at 7. Therefore, the court concluded that a prior adjudication of e testratrix' incompetency did not bar the jury from considering

9

the second will. *Id.* Other jurisdictions have established that inability to transact ordinary business does not establish a lack of testamentary capacity. *See Estate of Mann*, 184 Cal. App. 3d 593, 229 Cal. Rptr. 225 (1986), review denied (Nov. 12, 1986); *Estate of Rosen*, 447 A.2d 1220 (Me. 1982); *Matter of Congdon's Estate*, 309 N.W.2d 261 (Minn. 1981); *In re Hasting's Estate*, 479 Pa. 122, 387 A.2d 865 (Pa. 1978); *Whitteberry v. Whitteberry*, 9 Or. App. 154, 496 P.2d 240 (1972).

Judge Ferretti, in applying the doctrine of estoppel to grant summary judgment, appeared to use the doctrine to create a conclusive presumption of a lack of competency. The prior proceeding before Judge McAuliffe may, indeed be evidence that may create a presumption, but not a conclusive one. Martha should have a right at a trial to offer evidence, if she can, that her father, Dr. Ritter, had a lucid period at the time he executed the July 12th will she was offering. *See Estate of Hastings v. McQuiston*, 387 A.2d 865 (1978). But the court should not, under the doctrine of estoppel by judgment, have found that the prior proceeding's finding of a lack of capacity to execute powers of attorney on different dates was also a finding of fact in a will contest that Martha had no right to contest at trial.

This Court has considered Appellee's Motion for Sanctions filed subsequent to oral argument and hereby denies the motion.

JUDGMENT REVERSED.

COSTS TO BE PAID BY APPELLEE.